ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                               :
UNITED STATES OF AMERICA       :
                               :          **SEALED**
        - v. -                 :          **INDICTMENT**
                               :
                               :          21 Cr. _____
TERRENCE WILLIAMS,             :
ALAN ANDERSON,                 :          **21 CRIM 603**
ANTHONY ALLEN,                 :
DESIREE ALLEN,                 :
SHANNON BROWN,                 :
WILLIAM BYNUM,                 :
RONALD GLEN DAVIS,             :
CHRISTOPHER DOUGLAS-ROBERTS,   :
    a/k/a "Supreme Bey,"       :
MELVIN ELY,                    :
JAMARIO MOON,                  :
DARIUS MILES,                  :
MILTON PALACIO,                :
RUBEN PATTERSON,               :
EDDIE ROBINSON,                :
GREGORY SMITH,                 :
SEBASTIAN TELFAIR,             :
CHARLES WATSON JR.,            :
ANTOINE WRIGHT, and            :
ANTHONY WROTEN,                :
                               :
                Defendants.  X
- - - - - - - - - - - - - - -

**COUNT ONE**
**(Conspiracy to Commit Health Care Fraud and Wire Fraud)**

The Grand Jury charges:

**OVERVIEW**

1.   At all times relevant to this Indictment, the National

Basketball Association Players' Health and Welfare Benefit Plan[1]

_____

[1] The Plan was formerly known as the National Basketball Players'
Association - National Basketball Association ("NBPA-NBA")
Supplemental Benefit Plan.

(the "Plan") was a health care plan providing benefits to eligible active and former National Basketball Association ("NBA") players. From at least in or about 2017, up to and including at least in or about 2020, TERRENCE WILLIAMS, ALAN ANDERSON, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," MELVIN ELY, JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, GREGORY SMITH, SEBASTIAN TELFAIR, CHARLES WATSON JR., ANTOINE WRIGHT, and ANTHONY WROTEN, the defendants, and others known and unknown, engaged in a widespread scheme to defraud the Plan by submitting and causing to be submitted false and fraudulent claims for reimbursement of expenses for medical and dental services that were not actually rendered. Over the course of the scheme, the defendants submitted and caused to be submitted to the Plan false and fraudulent claims totaling approximately $3.9 million from which the defendants received approximately $2.5 million in fraudulent proceeds.

2.    TERRENCE WILLIAMS, the defendant, orchestrated the scheme to defraud the Plan. WILLIAMS recruited other Plan participants to defraud the Plan by offering to supply them with false invoices to support their false and fraudulent claims to the Plan in exchange for the payment of kickbacks to WILLIAMS. WILLIAMS provided ALAN ANDERSON, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-

ROBERTS, a/k/a "Supreme Bey," MELVIN ELY, JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, GREGORY SMITH, SEBASTIAN TELFAIR, CHARLES WATSON JR., ANTOINE WRIGHT, and ANTHONY WROTEN, the defendants, with false provider invoices to support their false and fraudulent claims that described medical and dental services that were not in fact provided, which those defendants then submitted and caused to be submitted to the Plan. WILLIAMS also assisted DAVIS, WATSON JR., and WRIGHT in procuring fraudulent letters of medical necessity to justify some of the purported medical services that were the subject of fraudulent invoices. In addition, in furtherance of the scheme, WILLIAMS impersonated an individual who processed Plan claims. In return for his provision of false supporting documentation for their fraudulent claims, many of the defendants paid WILLIAMS kickbacks, totaling at least approximately $230,000.

### BACKGROUND ON THE PLAN

3.    The Plan is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). The Plan is intended to provide additional coverage to eligible NBA players' existing medical coverage. The Plan provides a health reimbursement account ("HRA") benefit that allows for the reimbursement of certain medical expenses incurred by eligible active and former NBA players, their spouses, and other dependents that are not covered by a player's primary insurance carrier. Each

eligible Plan participant ("Plan Participant") has an individual HRA from which the Plan pays benefits. The Plan was funded through contributions by NBA member teams; those contributions were generally allocated equally among the HRAs for all eligible Plan Participants. In addition to NBA member team contributions, HRAs are adjusted for investment gains or losses based on a proportionate share of the investment returns on the HRA-related assets held in the Plan's trust.

4.    To be a Plan Participant eligible to receive the HRA benefit from the Plan, a player must meet certain tenure requirements, which generally means at least three credited regular seasons on an NBA team Roster. Plan Participants who incur any eligible medical expenses, as defined under Section 213(d) of the Internal Revenue Code, that are not covered by insurance, including charges by doctors and dentists, may be reimbursed for such expenses from the Plan Participant's HRA. The Plan's reimbursements to Plan Participants for eligible medical expenses are tax-free to the Plan Participant.

5.    The Plan is administered by the Board of Trustees (the "Board"), which consists of three members appointed by the NBA and three members appointed by the NBPA, which have offices in New York, New York and Secaucus, New Jersey, respectively. The Board appoints an Administrative Manager for the Plan. The Administrative Manager is an entity that oversees the Plan's

day-to-day management. All claims for benefits must be filed with the Administrative Manager, and the Administrative Manager determines whether claims are eligible to be paid under the Plan.

6. During the time period of the scheme described herein, the Plan employed two different entities to serve as the Administrative Manager at different times. One entity served as the Administrative Manager for the Plan between in or about 2004 and in or about early 2019. The second entity currently serves as the Administrative Manager for the Plan and has served in that role since in or about early 2019. As used herein, both entities are identified as the "Administrative Manager."

7. Plan Participants can submit reimbursement claims by mail, fax, or electronically. Claims under the Plan must be submitted to the Administrative Manager on the forms provided by the Administrative Manager and must include certain documentation, including itemized receipts reflecting that the charges were for eligible medical expenses and, in the case of a reimbursement, were paid by the Plan Participant. The Plan's Claim Form requests information from the Plan Participant, including details of the claim (e.g., type of service provided, the date, name of the participant or dependent for whom the service was provided, and the cost). On the Claim Form, the Plan Participant also must certify, among other things, that the

information the Plan Participant entered in the Claim Form is correct. The Claim Form states that "fraud is a felony in most states punishable by fines and/or imprisonment. Providing misleading or false information constitutes fraud."

8. If the Administrative Manager determined that a claim was eligible for payment by the Plan, the Plan Participant could be reimbursed in various ways, including by (a) a check sent through the mail or (b) payment sent by direct deposit.

## RELEVANT PERSONS

9. TERRENCE WILLIAMS, ALAN ANDERSON, ANTHONY ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," MELVIN ELY, JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, GREGORY SMITH, SEBASTIAN TELFAIR, CHARLES WATSON JR., ANTOINE WRIGHT, and ANTHONY WROTEN, the defendants, are each former NBA players and Plan Participants.

10. DESIREE ALLEN, the defendant, is the spouse of ANTHONY ALLEN, the defendant.

11. CHIROPRACTIC OFFICE-1 was a chiropractic and rehabilitation office in Encino, California, affiliated with a particular chiropractor ("CHIROPRACTOR-1").

12. DENTAL OFFICE-1 and DENTAL OFFICE-2 were dental offices in Beverly Hills, California, affiliated with a particular dentist ("DENTIST-1").

13.   WELLNESS OFFICE-1 was a doctor's office that advertised its specialties in sexual health, anti-aging, and general well-being in Washington State, and was affiliated with a particular doctor ("DOCTOR-1").

14.   DOCTOR-2 is a particular doctor affiliated with a healthcare facility that advertised its specialties in conventional medicine and alternative and natural therapies.

15.   ADMINISTRATIVE MANAGER EMPLOYEE-1 was a particular employee of one of the Administrator Manager entities.

16.   CC-1 and CC-2 were associates of TERRENCE WILLIAMS, the defendant, who assisted WILLIAMS in creating fabricated CHIROPRACTIC OFFICE-1 invoices.

## THE FRAUDULENT SCHEME

17.   In or about November 2017, TERRENCE WILLIAMS, the defendant, submitted and caused to be submitted false and fraudulent claims to the Plan seeking reimbursement of $19,000 for services that WILLIAMS purportedly received from CHIROPRACTIC OFFICE-1, along with fabricated CHIROPRACTIC OFFICE-1 invoices created by CC-1 at WILLIAMS's direction. The Administrative Manager approved WILLIAMS's $19,000 claim in part, and the Plan paid $7,672.55 to WILLIAMS in connection with his false and fraudulent claim.

18.   After defrauding the Plan for his own claims, TERRENCE WILLIAMS, the defendant, next recruited other former NBA players

to defraud the Plan. WILLIAMS offered to provide fraudulent invoices for CHIROPRACTIC OFFICE-1, DENTAL OFFICE-1, DENTAL OFFICE-2, and WELLNESS OFFICE-1 to former NBA players so that they could submit to the Administrative Manager false and fraudulent claims based on those fraudulent invoices and receive reimbursement for medical and/or dental services that they did not receive and for which they did not pay. In exchange, numerous former NBA players made kickback payments to WILLIAMS. ALAN ANDERSON, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," MELVIN ELY, JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, GREGORY SMITH, SEBASTIAN TELFAIR, CHARLES WATSON JR., ANTOINE WRIGHT, and ANTHONY WROTEN, the defendants, agreed to participate in the fraudulent scheme with WILLIAMS. PATTERSON, MOON, WROTEN, BYNUM, MILES, ANDERSON, BROWN, WATSON JR., DAVIS, and PALACIO paid kickbacks to WILLIAMS.

### THE FALSE AND FRAUDULENT CHIROPRACTIC OFFICE-1 CLAIMS

#### Terrence Williams Provided Fabricated Chiropractic Office-1 Invoices to Co-Conspirators in Furtherance of Their Scheme to Defraud the Plan

19.    Between in or about November 2017 and December 2017, and again from in or about November 2018 to June 2019, at the direction of TERRENCE WILLIAMS, the defendant, CC-1 created fake CHIROPRACTIC OFFICE-1 invoices for TERRENCE WILLIAMS, EDDIE ROBINSON, RUBEN PATTERSON, WILLIAM BYNUM, GREGORY SMITH,

CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," ANTHONY ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, ALAN ANDERSON, and SHANNON BROWN, the defendants, and emailed them to WILLIAMS. For example, on or about May 28, 2019, CC-1 emailed WILLIAMS a template for a fraudulent invoice designed to appear as if it had been issued by CHIROPRACTIC OFFICE-1, when it was not. In addition, on many other occasions, CC-1 sent emails to WILLIAMS attaching fake CHIROPRACTIC OFFICE-1 invoices bearing the names of co-conspirators for WILLIAMS to review before the fake invoices were finalized.

20.  In or about May 2019, CC-2 created fake CHIROPRACTIC OFFICE-1 invoices for RONALD GLEN DAVIS, CHARLES WATSON JR., and ANTOINE WRIGHT, the defendants, and emailed them to WILLIAMS. On or about May 3, 2019, CC-2 sent an email to CC-2's self that attached a template for a fake CHIROPRACTIC OFFICE-1 invoice that had the date, invoice number, services, and charge of $15,000 filled in; however, the "bill to" box, where the name of the patient would ordinarily be found, was blank.

21.  Between on or about December 6, 2017 and June 13, 2019, TERRENCE WILLIAMS, the defendant, emailed false and fraudulent CHIROPRACTIC OFFICE-1 invoices to EDDIE ROBINSON, RUBEN PATTERSON, WILLIAM BYNUM, GREGORY SMITH, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," ANTHONY ALLEN, DESIREE ALLEN, DARIUS MILES,

SEBASTIAN TELFAIR, ALAN ANDERSON, SHANNON BROWN, RONALD GLEN

DAVIS, CHARLES WATSON JR., and ANTOINE WRIGHT, the defendants.

### Terrence Williams and Alan Anderson Assisted in Procuring Fraudulent Letters of Medical Necessity for Ronald Glen Davis, Charles Watson Jr., and Antoine Wright in Furtherance of the Fraudulent Scheme

22.  The CHIROPRACTIC OFFICE-1 invoices fabricated by CC-1

and CC-2 for TERRENCE WILLIAMS, the defendant, generally described

the same services: therapeutic exercise, manual therapy,

whirlpool, aquatic therapy or exercise, and electrical

stimulation. For example, RONALD GLEN DAVIS, CHARLES WATSON JR.,

and ANTOINE WRIGHT, the defendants, each submitted claims for

reimbursement on or about May 8, 2019 (the "May 8, 2019 Claims");

each of those claims was supported by a set of fake CHIROPRACTIC

OFFICE-1 invoices that described the following same services as

having been received by DAVIS, WATSON JR., and WRIGHT: Manual

therapy, Whirlpool, Massage, Vasopneumatic Device, Therapeutic

Exercise, and Electrical Stimulation.

23.  To verify that particular services qualified for

reimbursement under the Plan, the Administrative Manager would

sometimes request that a Plan Participant provide a letter from a

licensed physician indicating that the received services were

medically necessary. With respect to the CHIROPRACTIC OFFICE-1

claims of RONALD GLEN DAVIS, CHARLES WATSON JR., and ANTOINE

WRIGHT, the defendants, the Administrative Manager requested that

letters of medical necessity be provided to justify the May 8, 2019 Claims for CHIROPRACTIC OFFICE-1 services. On May 31, 2019, TERRENCE WILLIAMS, the defendant, received emails entitled "Scanned Copies" from a UPS store in Tukwila, Washington — near where WILLIAMS resides — which attached responsive letters of medical necessity purporting to be from CHIROPRACTOR-1 dated May 31, 2019, for DAVIS, WATSON JR., and WRIGHT (the "May 31, 2019 CHIROPRACTOR-1 Letters"). The May 31, 2019 CHIROPRACTOR-1 Letters were submitted to the Administrative Manager to obtain reimbursement for the May 8, 2019 Claims. The May 31, 2019 CHIROPRACTOR-1 Letters are unusual in several respects: they are not on letterhead, contain unusual formatting, have grammatical errors, and one of the letters misspells a purported patient's name.

24. On or about June 10, 2019, the Administrative Manager advised RONALD GLEN DAVIS and CHARLES WATSON JR. that the letters of medical necessity had to be from a primary care physician on official letterhead. Shortly thereafter, on or about June 12, 2019, ALAN ANDERSON, the defendant, emailed TERRENCE WILLIAMS, the defendant, with revised letters dated June 12, 2019, purportedly from DOCTOR-2, that refer RONALD GLEN DAVIS, CHARLES WATSON JR., and ANTOINE WRIGHT, the defendants, to CHIROPRACTIC OFFICE-1 (the "June 12, 2019 Letters"). On or about June 25, 2019, ANDERSON emailed WILLIAMS with updated referral letters dated June 25, 2019,

purportedly from DOCTOR-2, for DAVIS, WATSON JR., and WRIGHT (the "June 25, 2019 Letters"). The June 25, 2019 Letters were submitted to the Administrative Manager in connection with DAVIS, WATSON JR., and WRIGHT's respective claims for reimbursement for services from CHIROPRACTIC OFFICE-1 and described injuries that were different than the injuries described in the May 31, 2019 CHIROPRACTER-1 Letters.

### False and Fraudulent Chiropractic Office-1 Claims Were Submitted in Furtherance of the Fraudulent Scheme

25. Between on or about December 7, 2017 and May 8, 2019, EDDIE ROBINSON, RUBEN PATTERSON, WILLIAM BYNUM, GREGORY SMITH, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," ANTHONY ALLEN, DESIREE ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, ALAN ANDERSON, SHANNON BROWN, RONALD GLEN DAVIS, CHARLES WATSON JR., and ANTOINE WRIGHT, the defendants, submitted and caused to be submitted false and fraudulent claims to the Plan seeking reimbursement for services purportedly performed by CHIROPRACTIC OFFICE-1 that ROBINSON, PATTERSON, BYNUM, SMITH, DOUGLAS-ROBERTS, ANTHONY ALLEN, MILES, TELFAIR, ANDERSON, BROWN, DAVIS, WATSON JR., and WRIGHT, in truth and in fact, did not receive. The claims consisted of: (a) false and fraudulent reimbursement claim forms in which ROBINSON, PATTERSON, BYNUM, SMITH, DOUGLAS-ROBERTS, ANTHONY ALLEN, MILES, TELFAIR, ANDERSON, BROWN, DAVIS, WATSON JR., and WRIGHT each falsely certified that he had received chiropractic services on

specific service dates; and (b) false and fraudulent CHIROPRACTIC OFFICE-1 invoices.

26. The Administrative Manager approved the fraudulent CHIROPRACTIC OFFICE-1 claims of EDDIE ROBINSON, RUBEN PATTERSON, WILLIAM BYNUM, GREGORY SMITH, and CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," ANTHONY ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, ALAN ANDERSON, and SHANNON BROWN, the defendants. The Plan paid: $65,000 to ROBINSON; $40,000 to PATTERSON; $182,224.09 to BYNUM; $74,000 to SMITH; $117,123.24 to DOUGLAS-ROBERTS; $265,000 to ANTHONY ALLEN; $260,000 to MILES; $207,000 to TELFAIR; $121,000 to ANDERSON; and $320,000 to BROWN.

27. The Board later independently reviewed the CHIROPRACTIC OFFICE-1 claims of ANTHONY ALLEN, SEBASTIAN TELFAIR, ALAN ANDERSON, and SHANNON BROWN, the defendants. As part of this review, the Board tried to substantiate that ANTHONY ALLEN, TELFAIR, ANDERSON, and BROWN had received the medical services from CHIROPRACTIC OFFICE-1 that formed the basis of their claims, and concluded that ANTHONY ALLEN, TELFAIR, ANDERSON, and BROWN had not received such services. The Board concluded that the CHIROPRACTIC OFFICE-1 claims of ANTHONY ALLEN, TELFAIR, ANDERSON, and BROWN should not have been approved and retroactively denied their claims. The Board also advised that ANTHONY ALLEN, TELFAIR, ANDERSON, and BROWN needed to repay the money that they received in connection with these claims. ANTHONY ALLEN repaid $350,075 of

the $420,075 he owed the Plan for his CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-2 claims. TELFAIR, ANDERSON, and BROWN did not make any repayments to the Plan, nor did they appeal the Board's decision.

28. The Administrative Manager denied the CHIROPRACTIC OFFICE-1 claims of: (a) RONALD GLEN DAVIS, the defendant, for $215,000; (b) CHARLES WATSON JR., the defendant, for $250,000; and (c) ANTOINE WRIGHT, the defendant, for $245,000. Upon review and investigation of these claims, the Board concluded that DAVIS, WATSON JR., and WRIGHT did not receive the CHIROPRACTIC OFFICE-1 services set forth in their claims.

### THE FALSE AND FRAUDULENT DENTAL OFFICE-1 AND DENTAL OFFICE-2 CLAIMS

Terrence Williams Provided Fraudulent Dental Office-1 and Dental Office-2 Invoices to Co-Conspirators in Furtherance of Their Scheme to Defraud the Plan

29. Between on or about April 12, 2018 and May 7, 2019, TERRENCE WILLIAMS, the defendant, emailed false and fraudulent DENTAL OFFICE-1 invoices for RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, GREGORY SMITH, RONALD GLEN DAVIS, and CHARLES WATSON JR., the defendants, as well as for relatives of PATTERSON, to PATTERSON, MOON, WROTEN, SMITH, DAVIS, WATSON JR., and a relative of PATTERSON. DENTIST-1 and/or DENTAL OFFICE-1 staff emailed these DENTAL OFFICE-1 invoices to WILLIAMS.

30. Between on or about March 20, 2019 and March 21, 2019, TERRENCE WILLIAMS, the defendant, emailed false and fraudulent

DENTAL OFFICE-2 invoices for ANTHONY ALLEN and SEBASTIAN TELFAIR, the defendants, as well as a relative of TELFAIR, to ANTHONY ALLEN, DESIREE ALLEN, and TELFAIR. DENTIST-1 emailed these DENTAL OFFICE-2 invoices, as well as DENTAL OFFICE-2 invoices for DARIUS MILES, the defendant, and a relative of MILES, to WILLIAMS.

31. The DENTAL OFFICE-1 and DENTAL OFFICE-2 invoices for RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, GREGORY SMITH, ANTHONY ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, RONALD GLEN DAVIS, and CHARLES WATSON JR., the defendants, as well as for relatives of PATTERSON and MILES, purported to show that they each received dental services at DENTAL OFFICE-1 or DENTAL OFFICE-2 in Beverly Hills, California on particular dates when, in truth and in fact, they did not, as they were not in California on certain of those dates. For example:

a. SMITH's DENTAL OFFICE-1 invoice purported to show that on or about December 20, 2018, SMITH received IV sedation and endodontic therapy (i.e., root canals) and crowns on eight teeth at DENTAL OFFICE-1 in Beverly Hills, California for $47,900. However, SMITH was travelling abroad on that date. According to a December 17, 2018 email from SMITH to TERRENCE WILLIAMS, the defendant, SMITH stated: "I'm out the country until the 27th."  In addition, according to United States Customs and Border Patrol records, on or about October 31, 2018, SMITH flew from Los Angeles, California to Taipei, Taiwan, and on or about December 31, 2018,

SMITH returned from Taipei, Taiwan to Los Angeles, California. Moreover, box scores for the 2018 Bank of Taiwan basketball team show that SMITH played in basketball games in Taipei on December 16, 2018 and December 21, 2018.

b.    DAVIS's DENTAL OFFICE-1 invoice purported to show that on or about October 2, 2018, DAVIS received crowns on eight teeth at DENTAL OFFICE-1 in Beverly Hills, California for $27,200. However, DAVIS was not in California on that date. Flight records show that DAVIS took a flight from Las Vegas, Nevada to Paris, France on October 2, 2018. In addition, according to geolocation data for DAVIS's cellphone, DAVIS was in Nevada and Utah on October 2, 2018.

32.    According to the DENTAL OFFICE-1 and DENTAL OFFICE-2 invoices, RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, GREGORY SMITH, ANTHONY ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, RONALD GLEN DAVIS, and CHARLES WATSON JR., the defendants, as well as relatives of PATTERSON, MILES, and TELFAIR, each received endodontic therapy on multiple teeth on a single date. For example:

a.    MOON received endodontic therapy on five teeth on March 23, 2018, three teeth on March 7, 2019, and two teeth on March 15, 2019.

b.    SMITH received endodontic therapy on four teeth on August 5, 2018, and eight teeth on December 20, 2018.

16

c.    TELFAIR received endodontic therapy on five teeth on March 6, 2018, eight teeth on March 1, 2019, and four teeth on March 5, 2019.

d.    WATSON JR. received endodontic therapy on twelve teeth on February 10, 2019.

33.    The DENTAL OFFICE-1 invoices for RONALD GLEN DAVIS and ANTHONY WROTEN, the defendants, and the DENTAL OFFICE-2 invoice for ANTHONY ALLEN, the defendant, reflect many of the same purported procedures on the same teeth on the same dates. For example, DAVIS, WROTEN and ANTHONY ALLEN each purportedly had: (a) endodontic therapy on the same six teeth on April 30, 2016; and (b) crowns on the same six teeth on May 11, 2016. Also, WROTEN and ALLEN each purportedly had endodontic therapy on the same thirteen teeth on September 6, 2018; DAVIS also purportedly had endodontic therapy on nine of the same teeth on the same day. WROTEN and ALLEN also each purportedly had crowns on the same twelve teeth on October 2, 2018; DAVIS also had crowns on eight of the same teeth on the same day.

34.    The DENTAL OFFICE-1 invoices for a relative of RUBEN PATTERSON, the defendant, and SEBASTIAN TELFAIR, the defendant, reflect many of the same purported procedures on the same teeth on the same dates. For example, a relative of PATTERSON and TELFAIR each purportedly had: (a) endodontic therapy on the same five

teeth on March 6, 2018; and (b) crowns on the same three teeth on April 12, 2018.

### Terrence Williams Facilitated His Co-Conspirators' Submission of Fraudulent Letters of Medical Necessity in Furtherance of the Fraudulent Scheme

35.  With respect to the DENTAL OFFICE-1 claims of RONALD GLEN DAVIS and CHARLES WATSON JR., the defendants, the Administrative Manager requested that letters of medical necessity be provided to justify the May 8, 2019 Claims for DENTAL OFFICE-1 services. On May 31, 2019, TERRENCE WILLIAMS, the defendant, received an email entitled "Scanned Copies" from a UPS store in Tukwila, Washington – near where WILLIAMS resides – which attached responsive letters of medical necessity purporting to be from DENTIST-1 dated May 31, 2019, for DAVIS and WATSON JR. (the "May 31, 2019 DENTIST-1 Letters"). The May 31, 2019 DENTIST-1 Letters were submitted to the Administrative Manager to obtain reimbursement for the May 8, 2019 Claims. The May 31, 2019 DENTAL-1 Letters are unusual in several respects: they are not on letterhead, they contain unusual formatting, they have grammatical errors, and they have the same font and font size as the May 31, 2019 CHIROPRACTOR-1 Letters referenced in paragraph 23, above.

### False and Fraudulent Dental Office-1 and Dental Office-2 Claims Were Submitted in Furtherance of the Fraudulent Scheme

36.  Between on or about April 17, 2018 and May 8, 2019, RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, GREGORY SMITH, RONALD

GLEN DAVIS, and CHARLES WATSON JR., the defendants, submitted and caused to be submitted false and fraudulent claims to the Plan seeking reimbursement for services that PATTERSON, MOON, WROTEN, SMITH, DAVIS, WATSON JR., and relatives of PATTERSON purportedly received from DENTAL OFFICE-1 on particular dates. The claims consisted of: (a) false and fraudulent reimbursement claim forms in which PATTERSON, MOON, SMITH, DAVIS, and WATSON JR. each falsely certified that he and/or his family members had received dental services on specific service dates; and (b) false and fraudulent DENTAL OFFICE-1 invoices for PATTERSON, MOON, WROTEN, SMITH, DAVIS, WATSON JR., and relatives of PATTERSON.

37. Between on or about March 20, 2019 and March 21, 2019, ANTHONY ALLEN, DESIREE ALLEN, DARIUS MILES, and SEBASTIAN TELFAIR, the defendants, submitted and caused to be submitted false and fraudulent claims to the Plan seeking reimbursement for services that ANTHONY ALLEN, MILES, TELFAIR, and relatives of MILES and TELFAIR purportedly received from DENTAL OFFICE-2 on particular dates. The claims consisted of: (a) false and fraudulent reimbursement claim forms in which ANTHONY ALLEN, MILES, and TELFAIR each falsely certified that he and/or his family members had received dental services on specific service dates; and (b) false and fraudulent DENTAL OFFICE-2 invoices for ANTHONY ALLEN, MILES, TELFAIR, and relatives of MILES and TELFAIR.

38.    The Administrative Manager approved the DENTAL OFFICE-1 claims of RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN and GREGORY SMITH, the defendants. The Plan paid: at least $172,830 to PATTERSON; $50,475 to MOON; $94,981.64 to WROTEN; and $83,435 to SMITH.

39.    The Administrative Manager denied the DENTAL OFFICE-1 claims of RONALD GLEN DAVIS, the defendant, for $132,000, and CHARLES WATSON JR., the defendant, for $121,800. Upon review and investigation of these claims, the Board concluded that DAVIS and WATSON JR. did not receive the DENTAL OFFICE-1 services set forth in their claims.

40.    The Administrative Manager approved the DENTAL OFFICE-2 claims of ANTHONY ALLEN, DARIUS MILES, and SEBASTIAN TELFAIR, the defendants. The Plan paid $155,075 to ANTHONY ALLEN; $84,140 to MILES; and $151,356 to TELFAIR. The Board later independently reviewed the DENTAL OFFICE-2 claims of ANTHONY ALLEN and TELFAIR. As part of this review, the Board tried to substantiate that ANTHONY ALLEN and TELFAIR had received the dental services from DENTAL OFFICE-2 that formed the basis of their claims and concluded that ANTHONY ALLEN and TELFAIR had not received such services. The Board concluded that the DENTAL OFFICE-2 claims of ANTHONY ALLEN and TELFAIR should not have been approved and retroactively denied their claims. The Board also advised that ANTHONY ALLEN and TELFAIR should repay the money that they received in connection with these

claims. As noted above, ANTHONY ALLEN repaid $350,075 of the $420,075 he owed the Plan for his CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-2 claims. TELFAIR did not make any repayments to the Plan.

## THE FALSE AND FRAUDULENT WELLNESS OFFICE-1 CLAIMS

### Terrence Williams Provided Fraudulent Wellness Office-1 Invoices to Co-Conspirators in Furtherance of Their Scheme to Defraud the Plan

41.  Between on or about March 16, 2019 and January 30, 2020, TERRENCE WILLIAMS, the defendant, emailed false and fraudulent WELLNESS OFFICE-1 invoices and related receipts to MILTON PALACIO and MELVIN ELY, the defendants.

42.  The WELLNESS OFFICE-1 invoices for MILTON PALACIO and MELVIN ELY, the defendants, purported to show that they each received wellness services at WELLNESS OFFICE-1 and affiliated clinics in Washington State on particular dates when, in fact, they did not, as neither PALACIO nor ELY were in Washington State on those dates.

43.  On or about September 3, 2019, TERRENCE WILLIAMS, the defendant, sent MELVIN ELY, the defendant, an email with a WELLNESS OFFICE-1 invoice for MILTON PALACIO, the defendant, dated July 11, 2017, and stated "Example, but clearly your name on it."

44.  On or about October 9, 2019, after TERRENCE WILLIAMS, the defendant, emailed certain WELLNESS OFFICE-1 invoices to MELVIN ELY, the defendant, ELY replied that "it didn't come out right."

21

45.  On or about November 20, 2019, MILTON PALACIO, the defendant, was advised by the Administrative Manager to submit an itemized statement and an NBA substantiation authorization form. On or about November 20, 2019, PALACIO uploaded WELLNESS OFFICE-1 invoices to the Administrative Manager's consumer portal for MELVIN ELY, the defendant, that were identical to PALACIO's WELLNESS OFFICE-1 invoices, except that the name "Melvin Ely" replaced "Milt Palacio." The WELLNESS OFFICE-1 invoices for PALACIO and ELY contained the same invoice numbers, same service dates, same treatments, and the same dollar amounts.

### False and Fraudulent Wellness Office-1 Claims Were Submitted in Furtherance of the Fraudulent Scheme

46.  Between on or about September 11, 2019 and January 21, 2020, MILTON PALACIO and MELVIN ELY, the defendants, submitted and caused to be submitted false and fraudulent claims to the Plan seeking reimbursement for services that PALACIO and ELY purportedly received from WELLNESS OFFICE-1 on particular dates. The claims were submitted via the Administrative Manager's consumer portal and were supported by the fraudulent WELLNESS OFFICE-1 invoices provided by WILLIAMS to PALACIO and ELY. WILLIAMS received these WELLNESS OFFICE-1 invoices from DOCTOR-1.

47.  The Administrative Manager denied the WELLNESS OFFICE-1 claims of MILTON PALACIO, the defendant, for $158,998, and MELVIN ELY, the defendant, for $206,080.

Milton Palacio and Melvin Ely Submitted Written Correspondence
to the Administrative Manager in Furtherance
of the Fraudulent Scheme

48.  On or about September 16, 2019, an email from MELVIN ELY's spouse's email account was sent to Administrative Manager regarding the subject "Denied Claim (Attn: []": "Good afternoon, my name is Melvin Ely this is my written notification referencing the denied claims listed below, these claims in addition to any and all claims moving forward have not been, and will not be processed through insurance unless indicated as such...."

49.  MILTON PALACIO, the defendant, signed a letter dated October 24, 2019, stating that he paid out of pocket for various services associated with the fraudulent WELLNESS OFFICE-1 invoices.

50.  On May 27, 2020, MILTON PALACIO, the defendant, emailed an Administrative Manager employee regarding his lack of reimbursement for the $74,998 claim: "Due to my insurance not being accepted at this office I requested reimbursement for these procedures through [Administrative Manager]. Also it is not showing in my account, so I was just wondering is it on hold or will it be credited back to my account if not reimbursed."

51.  MELVIN ELY, the defendant, signed a letter submitted to the Administrative Manager stating that certain denied claims will not be processed through insurance. The purpose of this letter was for the Plan to then pay the claims.

## TERRENCE WILLIAMS RECEIVED AT LEAST APPROXIMATELY $230,000 IN KICKBACKS IN CONNECTION WITH THE FRAUDULENT SCHEME

52.    RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, WILLIAM BYNUM, DARIUS MILES, ALAN ANDERSON, SHANNON BROWN, CHARLES WATSON JR., RONALD GLEN DAVIS, and MILTON PALACIO, the defendants, paid kickbacks to TERRENCE WILLIAMS, the defendant, in connection with their fraudulent CHIROPRACTIC-1 OFFICE, DENTAL OFFICE-1, DENTAL OFFICE-2, and WELLNESS OFFICE-1 claims. Specifically:

a.    On May 2, 2018 and May 3, 2018 – a few days after the Plan paid PATTERSON for one of his DENTAL OFFICE-1 claims – PATTERSON made $5,000 and $1,000 payments to WILLIAMS.

b.    On May 31, 2018 – the day after PATTERSON signed a DENTAL OFFICE-1 claim form for one of his relatives – PATTERSON paid $5,000 to WILLIAMS.

c.    On or about May 25, 2018 – one day after the Plan paid MOON for one of his reimbursement claims for DENTAL OFFICE-1 services – MOON paid $15,500 to WILLIAMS.

d.    On or about April 4, 2019 – several days before MOON submitted one of his reimbursement claims for DENTAL OFFICE-1 services – MOON paid $200 to WILLIAMS.

e.    On or about October 20, 2018 – a day after the Plan made a payment to WROTEN, WROTEN paid $20,000 to WILLIAMS.  On or about November 2, 2018, the Plan made a second payment to WROTEN.

Roughly three weeks later, Wroten made two payments totaling $1800 to WILLIAMS.

      f.   On or about December 12, 2018 – six days after the Plan paid BYNUM for his CHIROPRACTIC OFFICE-1 claim – BYNUM paid $30,000 to WILLIAMS.

      g.   On or about March 27, 2019 – roughly five days after MILES submitted the claim for CHIROPRACTIC OFFICE-1 and two days before MILES submitted the claim for DENTAL OFFICE-2 services – MILES paid $33,000 to WILLIAMS.

      h.   On or about April 5, 2019 – roughly one week before MILES submitted a claim for CHIROPRACTIC OFFICE-1 services – MILES paid $28,000 to WILLIAMS.

      i.   On or about April 22, 2019, the Plan paid $121,000 to ANDERSON for CHIROPRACTIC OFFICE-1 services. Roughly a week later, on April 29, 2019, ANDERSON paid $2,000 to WILLIAMS. On or about May 1, 2019, ANDERSON paid $3,000 to WILLIAMS.

      j.   On or about April 26, 2019 – just a few days after the Plan paid $273,819.82 to BROWN for CHIROPRACTIC OFFICE-1 services – BROWN paid $20,000 to WILLIAMS.

      k.   On May 1, 2019 – roughly a week before WATSON JR. submitted a claim for CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-1 services – WATSON JR. paid $7,500 to WILLIAMS.

l.    On or about May 8, 2019 – the day that WATSON JR. signed the claim form for CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-1 services – WATSON JR. paid $500 to WILLIAMS.

m.    On or about May 10, 2019 – two days after WATSON JR. signed the claim form for CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-1 services – WATSON JR. paid $49,500 to WILLIAMS.

n.    On or about June 25, 2019 – the date that DAVIS emailed to the Administrative Manager DAVIS's June 25, 2019 Letter from DOCTOR-2 – DAVIS paid $1,000 to WILLIAMS.

o.    On or about May 29, 2019 – over two weeks before PALACIO received fraudulent CHIROPRACTIC OFFICE-1 invoices from WILLIAMS – PALACIO's parents paid $7,500 to WILLIAMS.    PALACIO does not appear to have summitted these particular fraudulent invoices to the Plan.

### WILLIAMS UNLAWFULLY USED ADMINISTRATIVE MANAGER EMPLOYEE-1'S IDENTITY IN FURTHERANCE OF THE SCHEME TO DEFRAUD THE PLAN

53.    TERRENCE WILLIAMS, the defendant, agreed with his co-conspirators that they would pay kickbacks to WILLIAMS in exchange for WILLIAMS providing them with false and fraudulent invoices in connection with the scheme to defraud the Plan. As described above, at least ten co-conspirators paid kickbacks to WILLIAMS, totaling at least approximately $230,000. However, others did not.

54.    CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," the defendant, did not pay a kickback to TERRENCE WILLIAMS, the

defendant, despite having been paid by the Plan in connection with his fraudulent and false claim. On or about February 27, 2019, WILLIAMS used a personal email account – which WILLIAMS created and controlled – that contained the first name of ADMINISTRATIVE MANAGER EMPLOYEE-1, followed by the name of one of the Plan's Administrative Managers and then the word "benefits" to email DOUGLAS-ROBERTS regarding his claim. In that email, WILLIAMS falsely claimed to be ADMINISTRATIVE MANAGER EMPLOYEE-1 and falsely raised a potential issue with DOUGLAS-ROBERTS's reimbursement in an effort to frighten DOUGLAS-ROBERTS into re-engaging with WILLIAMS. WILLIAMS – posing as ADMINISTRATIVE MANAGER EMPLOYEE-1 – stated that DOUGLAS-ROBERTS's claim "has the same processed invoice numbers as another claim for a different player," which would result in voiding the claim and DOUGLAS-ROBERTS needing to pay back the Plan. WILLIAMS signed the email using ADMINISTRATIVE MANAGER EMPLOYEE-1's name, employer, business address, main business phone number, and business fax number, but changed ADMINISTRATIVE MANAGER EMPLOYEE-1's direct business phone number to a phone number with an area code for New York City.

## STATUTORY ALLEGATIONS

55.  From at least in or about 2017, up to and including at least in or about 2020, in the Southern District of New York and elsewhere, TERRENCE WILLIAMS, ALAN ANDERSON, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS,

CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," MELVIN ELY, JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, GREGORY SMITH, SEBASTIAN TELFAIR, CHARLES WATSON JR., ANTOINE WRIGHT, and ANTHONY WROTEN, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit: (a) health care fraud, in violation of Title 18, United States Code, Section 1347; and (b) wire fraud, in violation of Title 18, United States Code, Section 1343.

56. It was a part and object of the conspiracy that TERRENCE WILLIAMS, ALAN ANDERSON, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," MELVIN ELY, JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, GREGORY SMITH, SEBASTIAN TELFAIR, CHARLES WATSON JR., ANTOINE WRIGHT, and ANTHONY WROTEN, the defendants, and others known and unknown, willfully and knowingly, would and did execute and attempt to execute, a scheme or artifice to defraud a health care benefit program and to obtain by means of false or fraudulent pretenses, representations, and promises, money or property under the custody or control of a health care benefit program in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347.

57.   It was further a part and object of the conspiracy that TERRENCE WILLIAMS, ALAN ANDERSON, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," MELVIN ELY, JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, GREGORY SMITH, SEBASTIAN TELFAIR, CHARLES WATSON JR., ANTOINE WRIGHT, and ANTHONY WROTEN, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

### COUNT TWO
### (Aggravated Identity Theft)

The Grand Jury further charges:

58.   The allegations contained in paragraphs 1 through 54 of this Indictment are repeated and realleged as if fully set forth herein.

59.  On or about February 27, 2019, in the Southern District of New York and elsewhere, TERRENCE WILLIAMS, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, WILLIAMS used the name, employer, business address, main business phone number, and business fax number of another person, namely, Administrative Manager Employee-1, during and in relation to the offense charged in Count One of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## FORFEITURE ALLEGATION

60.  As a result of committing the offense alleged in Count One of this Indictment, TERRENCE WILLIAMS, ALAN ANDERSON, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," MELVIN ELY, JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, GREGORY SMITH, SEBASTIAN TELFAIR, CHARLES WATSON JR., ANTOINE WRIGHT, and ANTHONY WROTEN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c), any and all property, real or personal, that constitutes or is derived, directly or indirectly,

from gross proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

## Substitute Assets Provision

61.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
AUDREY STRAUSS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

TERRENCE WILLIAMS,
ALAN ANDERSON,
ANTHONY ALLEN,
DESIREE ALLEN,
SHANNON BROWN,
WILLIAM BYNUM,
RONALD GLEN DAVIS,
CHRISTOPHER DOUGLAS-ROBERTS,
a/k/a "Supreme Bey,"
MELVIN ELY,
JAMARIO MOON,
DARIUS MILES,
MILTON PALACIO,
RUBEN PATTERSON,
EDDIE ROBINSON,
GREGORY SMITH,
SEBASTIAN TELFAIR,
CHARLES WATSON JR.,
ANTOINE WRIGHT, and
ANTHONY WROTEN,

Defendants.

### SEALED INDICTMENT

21 Cr. ____
(18 U.S.C. §§ 1349, 1028A, and 2.)

AUDREY STRAUSS
United States Attorney

_Brian Comey_
Foreperson

10/04/21 SEALED INDICSMENS f:/ED
w/ ARRESS WARRANS
CA   KH PARNER
USMJ